(No. 33776.—

F. M. Ross, d/b/a Weather-Seal of Peoria, Appellant, *vs.* Roy F. Cummins, Director of Labor, Appellee.

*Opinion filed January 19, 1956.*

SUTHERLAND & SUTHERLAND, of Peoria, for appellant.

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel,) for appellee.

Mr. CHIEF JUSTICE HERSHEY delivered the opinion of the court:

The appellant, who is engaged in the business of selling and installing combination storm doors and windows, asks us to reverse the circuit court of Peoria County, which held him liable for Illinois unemployment compensation tax on certain of his alleged employees (called "estimators"). The court approved a finding of the Director of Labor and entered judgment against the appellant for $4758.64, including assessment, interest and penalties.

The decisive question is whether the estimators were in the employment of the appellant within the meaning of the Illinois Unemployment Compensation Act. Ill. Rev. Stat. 1951, chap. 48, pars. 300 *et seq.*

Section 206 of the act defines "employment" as "any service * * * performed by an individual for an employing unit, * * *." (Ill. Rev. Stat. 1951, chap. 48, par. 316.) The appellant agrees that this is broad enough to cover the work of these estimators, but claims an exemption under section 212 of the act. To qualify for this statutory exemption, he must prove the following: (1) The individual (*i.e.*, his alleged employee) is free from control or direction over the performance of his services, both under his contract of service and in fact. (2) Such service is either outside the usual course of the business or is performed outside of all the places of the enterprise. (3) Such individual is engaged in an independently established trade, occupation, profession, or business. Ill. Rev. Stat. 1951, chap. 38, par. 322.

The three conditions are conjunctive, so that once a service is shown, the employer must prove all three to exempt himself. *Concrete Materials Corp.* v. *Gordon,* 395 Ill. 203; *Eutectic Welding Alloys Corp.* v. *Rauch,* 1 Ill. 2d 328.

The statute is a police-power act, to be liberally construed so as to effectuate the legislature's intention of helping protect workers against the consequences of unemployment, (*Commonwealth Life and Accident Ins. Co.* v. *Board of Review,* 414 Ill. 475,) and exemption provisions are strictly construed against the one claiming the exemption. (*Grant Contracting Co.* v. *Murphy,* 387 Ill. 137). Common-law concepts of master and servant or agency are not controlling, nor is the title or description by which the parties describe personnel or service conclusive. *Eutectic Welding Corp.* v. *Rauch,* 1 Ill. 2d 328; *Parks Cab Co.* v. *Annunzio,* 412 Ill. 549.

The facts, except as to minor details, are undisputed. The appellant, F. M. Ross, d/b/a Weather-Seal of Peoria, sells combination storm doors and windows under an agency

contract with the manufacturer. He has a franchise as a distributor in a nine-county area and maintains a Peoria office.

During the years 1948 through a part of 1951, he employed "salesmen" or "estimators." The work of these estimators was to contact people in the territory and secure orders for the installation of appellant's windows and doors. These estimators, however, were not on a salary, nor did they receive any expense money or advancements. Their sole compensation was derived from commissions earned on sales which they procured for the appellant.

There were no written contracts between the appellant and his estimators, but it was orally agreed that the latter, after a training course from the appellant's sales supervisor, were free to work, at their own discretion, in the nine-county franchise area. They were under no obligation to devote themselves exclusively to this work, but it was understood they were not to sell competing articles. Further, they were expected to attend sales meetings and conferences (at least once a month), and were permitted to sell only upon terms and conditions prescribed by the appellant. The appellant reserved the right to reject any order, and also had the right to pass on credit risks. The appellant could terminate the agreement with an estimator at any time without liability for breach of contract, and the latter was free to quit any time.

Additional facts are stated in the following two paragraphs, where that evidence particularly relied upon by the respective parties is summarized.

The evidence stressed by the Director of Labor discloses the following: The estimators were secured by newspaper ads in the "salesmen wanted" section. The appellant's sales manager or supervisor gave them a training course. The sales manager also assisted in or handled some difficult cases. The estimators contacted purchasers, took orders and measured the door or window areas to be equipped.

They were furnished samples, advertising material and literature, together with order blanks, all bearing the appellant's imprint. They agreed to maintain stable prices and not to sell competing products. Orders required the appellant's approval as to place, time, price and credit arrangements. Estimators reported for weekly sales talks, information regarding new conditions, and their commission checks. They sometimes adjusted customer complaints. While they had no drawing accounts, some had been loaned money by the appellant. Most estimators had no established business. Sometimes they used the appellant's phone for solicitations. Of 95 estimators, 69 had no other calling or business. The sales contracts showed the appellant as seller and the customer as buyer. And the appellant did not knowingly permit competitive selling by estimators.

For the appellant, these facts are stressed: There were no written contracts with the estimators. They were not termed "salesmen" or "employees." Their compensation was not salary, but commission. No advances were made. The estimators were under no control or direction as to either the amount of time to be devoted to the work, or the location or extent of place where it was performed. No office desk or facilities were provided by the appellant. No records were required of the estimators. Estimators listed their own home telephone numbers for calls. Of 95 estimators, 26 had businesses or callings other than their services for appellant. Some of the estimators worked very short periods for the appellant, a few less than a week.

We are asked to reverse primarily on the basis of *John Gabel Manufacturing Co.* v. *Murphy,* 390 Ill. 455, and *Aluminum Cooking Utensil Co.* v. *Gordon,* 393 Ill. 542.

The *Gabel case* did not involve the status of commission men at all, but the leasing of automatic vending machines and phonographs, and is easily distinguished. The *Aluminum Cooking case* held that control was not necessarily

implied from the price-fixing, territory, cancellations, reporting, and hours aspects of the relationship there involved. Moreover, while the case was somewhat distinguished on its facts, it was expressly overruled in the *Eutectic Welding case* to the extent inconsistent with that decision. The *Gabel case* being distinguished and the *Aluminum Cooking case* being limited or expressly overruled, we do not consider them dispositive here.

Compensation by commission or a kind of payment other than standard industrial type salaries or wages does not necessarily preclude a finding of employment. Therefore, where their services were not exempt (as uncontrolled by the alleged employer, outside the scope and locale of his business, and independent), commission men have been held to be in employment. *Murphy* v. *Daumit,* 387 Ill. 406 (vacuum cleaner salesmen); *New York Life Ins. Co.* v. *Murphy,* 388 Ill. 316 (insurance solicitors); *Arrow Petroleum Co.* v. *Murphy,* 389 Ill. 43 (fuel oil haulers, peddlers and solicitors); *Van Ogden, Inc.* v. *Murphy,* 390 Ill. 133 (cosmetic salesmen). Cf. *Commonwealth Life and Accident Ins. Co.* v. *Board of Review,* 414 Ill. 475 (certain insurance solicitors).

First, we cannot say that the individuals involved were so free from control by the appellant as to preclude a determination of employment on that score. Rather, it appears that the appellant did have control as to price, form of contract, type of literature used, acceptance of orders, terms of sale, noncompetition, remission of payments, right to discharge, right to instruct, furnishing of leads, and complaint procedures. The control contemplated by statute is general control, and the right to control may be sufficient even though it is not exercised. (*Murphy* v. *Daumit,* 387 Ill. 406.) That there was freedom of movement or latitude in detailed actions does not negate control. *Arrow Petroleum Co.* v. *Murphy,* 389 Ill. 43; *Van Ogden, Inc.* v. *Murphy,* 390 Ill. 133.

Second, while the services were to a large degree located outside the appellant's Peoria office, they were within his nine-county franchise area, which has, in some cases, been considered the employer's place of business. (See *Murphy v. Daumit,* 387 Ill. 406.) Some functions were, in fact, performed at the office, in the course of weekly meeting appearances. At all events, they were not outside the scope, or usual course, of his business.

Third, 69 out of the appellant's 95 estimators had no other calling. Of the 26 claimed to have been engaged in other occupations, few were so established and independent as to preclude a holding that the appellant had these estimators in his employment as a class. Another job or calling, though it may be primary, does not of itself constitute such independent engagement or establishment in trade, business, occupation or profession as to prevent the one so involved from being in the employment of another within the meaning of this act. *Arrow Petroleum Co.* v. *Murphy,* 389 Ill. 43; *Concrete Materials Corp.* v. *Gordon,* 395 Ill. 203.

Accordingly, we are of the opinion that the appellant has not shown that the estimators' services were exempt under section 212 as being uncontrolled, outside his business and independent.

The judgment of the circuit court of Peoria County is affirmed.

*Judgment affirmed.*