Joann C. GRACE

v.

MAINE EMPLOYMENT SECURITY COMMISSION.

Supreme Judicial Court of Maine.

March 19, 1979.

**1234**

Childs, McKinley, Emerson & Rovzar by Roderick R. Rovzar, Portland (orally), for plaintiff.

Patricia M. McDonough (orally), Asst. Atty. Gen., Augusta, for defendants.

Fred E. Hanscom, Rumford, for Rumford Community Hospital.

Before McKUSICK, C. J., and POMEROY, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

Claimant Joann C. Grace appeals from an order of the Superior Court affirming a decision of the Maine Employment Security Commission (hereafter Commission) disqualifying claimant from receiving unemployment compensation benefits on grounds that Grace refused to accept an offer of suitable employment as required by 26 M.R.S.A. § 1193(3) (Supp.1978). The sole issue on appeal to the Superior Court, and again to this court, is whether the Commission was correct in concluding that the part-time employment offered to Grace was "suitable" as defined by the applicable statutory provision.

We deny the appeal.

The relevant facts are not disputed. Grace had been employed full time as a lab technician by Rumford Community Hospital at an hourly rate of $2.73. On July 12, 1975, she was laid off. On September 18, 1975, while Grace was still unemployed, Rumford Community Hospital offered her a part-time job as an E.K.G. technician at an hourly wage of $2.40 for a 20-hour week. Grace did not accept the job offer. The Commission[1] subsequently disqualified her from receiving unemployment compensation on the ground that "the claimant refused to accept an offer of suitable work for which she was reasonably fitted . . . ." Grace appealed to the Superior Court pursuant to 26 M.R.S.A. § 1194(9), and the

---

1. Within the Maine Employment Security Commission, the first decision finding claimant Grace disqualified for benefits was made on October 27, 1975, by a deputy pursuant to 26 M.R.S.A. § 1194(2). Following a hearing on November 3, 1975, at which Grace testified, the "Appeal Tribunal" within the Commission on November 14, 1975, after making findings of fact, affirmed the deputy's decision that the claimant was disqualified because she had refused suitable employment. On a further administrative appeal by the claimant, the full Commission on December 2, 1975, affirmed the decision of the Appeal Tribunal. The Commission's written decision for some reason was not mailed until February 25, 1976, and the claim-

ant promptly thereafter took an appeal to the Superior Court.

The Superior Court docket shows no action taken by the claimant on her appeal until June 1978 when she filed a motion for summary judgment "on the issue of liability." Although a motion for summary judgment is inappropriate in an appeal on questions of law only from the Employment Security Commission, cf. Garon v. Glazer, Me., 267 A.2d 381 (1970), the Superior Court promptly held a hearing upon the question of law raised by the appeal, and, after receiving memoranda of law, entered on July 31, 1978, its findings and orders affirming the Commission's decision. This appeal to the Law Court followed.

Superior Court affirmed the Commission's decision.

26 M.R.S.A. § 1193 provides that "[a]n individual shall be disqualified for benefits . . . [f]or the duration of his unemployment subsequent to his having refused to accept an offer of suitable work for which he is reasonably fitted . . . ." Further, section 1193(3)(A) delineates the factors to be considered by the Commission in determining whether the proffered employment is suitable:

"In determining whether or not any work is suitable for an individual, the commission shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and *prior earnings,* his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence." (Emphasis added)

Grace argues that the Superior Court erred in calculating the prior earnings factor. The reviewing court observed that the proffered job involved a wage cut of only 33¢ per hour and concluded that "the offer was of suitable work as the cut was only 13¢ on an hourly basis." Grace contends that instead of comparing hourly wage rates, the Superior Court should have compared her total weekly earnings (*i. e.,* hours × hourly wages) in her old job with her expected total weekly earnings in the proffered position. Since the new job was only part time, application of Grace's formula would have led to the conclusion that the new job entailed a reduction in total earnings of 56%.

■ We agree with the Superior Court's decision. An examination of section 1193(3) reveals that the Commission must compare *both* wage rates and total earnings in the old and proffered jobs in determining whether the proffered employment is suitable. That section directs the Commission to consider not only the "prior earnings" of the claimant, but also his "prior training" and "experience," *i. e.,* the claimant's particular job skill. In the employment mar-

ket, equivalent skills generally command equivalent wages. Consequently, comparing wage rates in the old and proffered jobs provides a rough measure of whether the new job matches the claimant's prior experience and training.

For example, in the instant case, claimant testified that although she had not previously worked as an E.K.G. technician, she had received preliminary training for the job in connection with her previous position as a lab technician. The similarity in the skill requirement for each position is reflected in a wage differential of only 33¢ per hour. In short, the Superior Court's comparison of the wage rates in the old and proffered jobs was entirely proper.

■ The sole remaining question is whether the Commission was correct in concluding that a reduction in total earnings of 56% did not render the proffered job unsuitable. Again, we agree with the Superior Court's decision. The Commission's assessment of the suitability of a proffered position rests on an evaluation of all the factors included in section 1193(3). *Lowell v. Maine Employment Security Commission,* 159 Me. 177, 190 A.2d 271 (1963). No single factor is determinative. As stated in *Lowell, supra,* the claimant's length of unemployment may influence the Commission's assessment of whether a particular job offer is suitable:

" '[W]hile a woman may be justified in refusing as unsuitable, work offered to her immediately after her separation from her job, the situation may change after the lapse of a considerable time during which she has remained unemployed. Work which was unsuitable at the beginning of her unemployment may become suitable when consideration is given to the length of unemployment and the prospects of securing her accustomed work. Although the applicant may continue to refuse jobs paying a lower rate of compensation, she must do so at her own expense rather than at the expense of the unemployment fund. The cushion of security between jobs provided by the statute was not designed to finance an

apparently hopeless quest for the claimant's old job or a job paying equal wages.'" *Id.* 159 Me. at 184, 190 A.2d at 274, quoting *Hallahan v. Riley*, 94 N.H. 338, 45 A.2d 886, 888 (1946).

 In the case at bar, Grace had been unemployed for over two months when she received the offer of part-time employment. Claimant makes no argument that she had good prospects for full-time employment or that part-time employment prevented her from seeking a full-time position. Except for the reduction in hours and in hourly wage rate, the possibility that the new job would require additional training, and the necessity for Grace to be on call for night duty, the proffered employment was similar in every respect to her prior job. Under these circumstances, the Commission was correct in concluding that the proffered employment was "suitable" as defined in section 1193(3). Indeed, a finding that a reduction in total earnings of 56% alone rendered the proffered job unsuitable would have been equivalent to a finding that part-time work is unsuitable as a matter of law, a conclusion clearly inconsistent with 26 M.R.S.A. § 1191(3),[2] which contemplates that beneficiaries may take part-time jobs. The instant case is similar to *Frye v. Department of Employment Security*, 134 Vt. 131, 353 A.2d 339, 340 (1976), in which the Supreme Court of Vermont upheld the determination of the Employment Security Board that certain proffered employment was suitable although "[t]he available work was part-time, at a weekly wage lower than claimant's previous earnings," stating:

"To reverse the decision of the Board, we would be compelled to hold that part time employment is unsuitable as a matter of law, and a refusal to accept it justified under any circumstances. This we are unwilling to do. Such a holding would be incompatible with the statutory provisions compensating partial unemployment. [Citation omitted] Combined with other factors, the part time element of the proffered employment may justify its refusal, but standing alone it is not such justification. Each case must be judged on its particular facts, and the facts here found by the Board, acting under the statute, do not render its decision clearly erroneous. Its findings have evidentiary support, and its conclusions and decision are supported by the findings." 134 Vt. 131, *Id.* 353 A.2d at 342.

According, the entry must be:

Appeal denied.

Judgment affirmed.

WERNICK, J., did not sit.

---

**2.** 26 M.R.S.A. § 1191(3) states in pertinent part:

"Weekly benefit for partial unemployment. On and after April 1, 1966, each eligible individual who is partially unemployed in any week shall be paid with respect to such week a partial benefit in an amount equal to his weekly benefit amount less that part of his earnings paid or payable to him with respect to such week which is in excess of $10 plus any fraction of a dollar, . . .."